UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| TOMMY WILSON and CALVIN KENDRICK, on Behalf of themselves and all Others Similarly Situated, | ) ) ) ) | No. |
| | ) ) | CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE |
| Plaintiffs, | ) ) | RELIEF |
| vs. | ) ) | |
| YAZAKI CORPORATION and YAZAKI NORTH AMERICA, INC., | ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

Plaintiffs Tommy Wilson and Calvin Kendrick ("Plaintiffs"), on behalf of themselves and all others similarly situated (the "Classes" as defined below), upon personal knowledge as to the facts pertaining to them and upon information and belief as to all other matters, based on the investigation of counsel, bring this class action for damages, injunctive relief and other relief pursuant to the federal antitrust laws and state antitrust, unfair competition, and consumer protection laws, demand a trial by jury, and allege as follows:

## NATURE OF ACTION

1.      This lawsuit is brought as a proposed class action against the Yazaki Defendants (defined below), suppliers of Instrument Panel Clusters (defined below) globally and in the United States, for engaging in a nearly decade-long conspiracy to fix, raise, maintain and/or stabilize prices, rig bids and allocate the market and customers in the United States for Instrument Panel Clusters. The Yazaki  Defendants' conspiracy successfully targeted the long-

struggling United States automotive industry, raising prices for car manufacturers and consumers alike.

2.      Yazaki Corporation ("Yazaki") recently agreed to plead guilty and pay a criminal fine of $470 million – the second largest fine ever for an antitrust violation – stemming from its participation in three separate unlawful conspiracies to fix prices and rig bids for certain auto parts, including Instrument Panel Clusters.  The ongoing criminal investigation launched by the United States Department of Justice's Antitrust Division ("DOJ") has already resulted in more than $748 million in criminal fines.

3.      Plaintiffs seek to represent consumers who purchased or leased new motor vehicles containing Instrument Panel Clusters or who purchased replacement Instrument Panel Clusters for their motor vehicles during the period from and including December 2002 up to and including February 2010 (the "Class Period").

4.      "Instrument Panel Clusters," also known as meters, are the mounted array of instruments and gauges housed in front of the driver of an automobile.

5.      The Yazaki Defendants manufacture, market, and sell Instrument Panel Clusters throughout the United States.

6.      The Yazaki Defendants and other co-conspirators (as yet unknown) agreed, combined, and conspired to fix, raise, maintain and/or stabilize prices, rig bids and allocate the market and customers in the United States for Instrument Panel Clusters.

7.      Competition authorities in the United States, the European Union, and Japan have been investigating a conspiracy involving automotive parts since at least February 2010.  As part of its criminal investigation, the DOJ is seeking information about unlawful anticompetitive conduct in the markets for a number of different automotive parts, including Instrument Panel

Clusters, and the Federal Bureau of Investigation ("FBI") has participated in raids, pursuant to search warrants, carried out in the offices of a number of major companies in the industry.  The European Commission Competition Authority ("EC") has also conducted dawn raids at the European offices of several of these companies.

8.      Defendant Yazaki has agreed to plead guilty to participating in a conspiracy to fix prices and rig bids of Instrument Panel Clusters from at least as early as December 2002 and continuing until at least February 2010, and has agreed to pay a $470 million criminal fine related to its unlawful participation in three separate price-fixing and bid rigging conspiracies, including a conspiracy to fix the prices of Instrument Panel Clusters. The combination and conspiracy engaged in by the Yazaki Defendants and their co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

9.      As part of its forthcoming plea agreement, Yazaki has agreed to assist the DOJ in its ongoing criminal investigation into the automotive parts industry.

10.      As a direct result of the anti-competitive and unlawful conduct alleged herein, Plaintiffs and the Classes paid artificially inflated prices for Instrument Panel Clusters during the Class Period and have thereby suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

11.      Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against the Yazaki Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1).   Plaintiffs also assert claims for actual and exemplary damages pursuant to state antitrust, unfair competition, and consumer protection laws, and seek to obtain restitution, recover damages and secure other relief against the Yazaki Defendants for violations

of those state laws.  Plaintiffs and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

12.     This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1), and Title 28, United States Code, Sections 1331 and 1337.  This Court has subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and in which some members of the proposed Classes are citizens of a state different from some of the Yazaki Defendants.

13.     Venue is proper in this district pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this district, and one or more of the Yazaki Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this district.

14.     This Court has *in personam* jurisdiction over each of the Yazaki Defendants because each Yazaki Defendant, either directly or through the ownership and/or control of its subsidiaries, *inter alia*: (a) transacted business in the United States, including in this district; (b) directly or indirectly sold or marketed substantial quantities of Instrument Panel Clusters throughout the United States, including in this district; (c) had substantial aggregate contacts with the United States as a whole, including in this district; or (d) were engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing

4

in, located in, or doing business throughout the United States, including in this district. The Yazaki Defendants also conduct business throughout the United States, including in this district, and they have purposefully availed themselves of the laws of the United States.

15.     The Yazaki Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial and reasonably foreseeable and intended anti-competitive effects upon interstate commerce within the United States.

16.     The activities of the Yazaki Defendants and their co-conspirators were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States. The Yazaki Defendants' products are sold in the flow of interstate commerce.

17.     Instrument Panel Clusters manufactured abroad by the Yazaki Defendants and sold for use in automobiles in the United States are goods brought into the United States for sale, and therefore constitute import commerce. To the extent any Instrument Panel Clusters are purchased in the United States, and such Instrument Panel Clusters do not constitute import commerce, the Yazaki Defendants' activities with respect thereto, as more fully alleged herein during the Class Period, had, and continue to have, a direct, substantial and reasonably foreseeable effect on United States commerce. The anticompetitive conduct, and its effect on United States commerce described herein, proximately caused antitrust injury in the United States.

18.     The Yazaki Defendants substantially affected commerce throughout the United States, causing injury to Plaintiffs and members of the Classes. The Yazaki Defendants, directly and through their agents, engaged in activities affecting all states, to fix, raise, maintain and/or stabilize prices, rig bids and allocate the market and customers in the United States for

Instrument Panel Clusters, which conspiracy unreasonably restrained trade and adversely affected the market for Instrument Panel Clusters.

19.     The Yazaki Defendants' conspiracy and wrongdoing described herein adversely affected persons in the United States who purchased Instrument Panel Clusters for personal use, including Plaintiffs and the Classes.

## PARTIES

20.     Plaintiff Tommy Wilson is a resident of Mississippi who purchased Instrument Panel Clusters indirectly from the Yazaki Defendants and/or their co-conspirators.

21.     Plaintiff Calvin Kendrick is a resident of Alabama who purchased Instrument Panel Clusters indirectly from the Yazaki Defendants and/or their co-conspirators.

**The Yazaki Defendants**

22.     Defendant Yazaki Corp. is a Japanese corporation.  Defendant Yazaki Corporation – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Instrument Panel Clusters that were purchased throughout the United States, including in this district, during the Class Period.

23.     Defendant Yazaki North America, Inc. is an Illinois corporation with its principal place of business in Canton Township, Michigan.  It is a subsidiary of and wholly owned and/or controlled by its parent, Yazaki Corporation.  Defendant Yazaki North America, Inc. manufactured, marketed and/or sold Instrument Panel Clusters that were purchased throughout the United States, including in this district, during the Class Period.

24.     Yazaki Corp. and Yazaki North America, Inc. are herein referred to and shall be referred to together herein as the "Yazaki Defendants."

## AGENTS AND CO-CONSPIRATORS

25.     Each Yazaki Defendant acted as the principal of or agent for the other Yazaki Defendant with respect to the acts, violations, and common course of conduct alleged.

26.     Various persons, partnerships, sole proprietors, firms, corporations and individuals not named as Defendants in this lawsuit, and individuals, the identities of which are presently unknown, have participated as co-conspirators with the Yazaki Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anti-competitive conduct.

27.     Whenever in this Complaint reference is made to any act, deed or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's or limited liability entity's business or affairs.

## FACTUAL ALLEGATIONS

### A.     The Instrument Panel Clusters Industry

28.     Instrument Panel Clusters, also known as meters, are the mounted array of instruments and gauges housed in front of the driver of an automobile.

29.     Instrument Panel Clusters are installed by automobile original equipment manufacturers ("OEMs") in new cars as part of the automotive manufacturing process.  They are also installed in cars to replace worn out, defective or damaged Instrument Panel Clusters.

30.     When purchasing Instrument Panel Clusters, OEMs issue Requests for Quotation ("RFQs") to automotive parts suppliers.  Automotive parts suppliers submit quotations, or bids, to OEMs in response to RFQs, and the OEMs usually award the business to the selected

automotive parts supplier for four to six years.  Typically, the bidding process begins approximately three years prior to the start of production of a new model.  Japanese OEMs procure parts for U.S.-manufactured vehicles both in Japan and the United States.

31.     The Yazaki Defendants and their co-conspirators supplied Instrument Panel Clusters to OEMs for installation in vehicles manufactured and sold in the United States and elsewhere.  The Yazaki Defendants and their co-conspirators manufactured Instrument Panel Clusters (a) in the United States for installation in vehicles manufactured and sold in the United States, (b) in Japan for export to the United States and installation in vehicles manufactured and sold in the United States, and (c) in Japan for installation in vehicles manufactured in Japan for export to and sale in the United States.

32.     Plaintiffs and members of the proposed Classes purchased Instrument Panel Clusters indirectly from the Yazaki Defendants and/or their co-conspirators.  By way of example, an owner or leasee of a vehicle may indirectly purchase an Instrument Panel Cluster from the Yazaki Defendants or their co-conspirators as part of purchasing or leasing the new vehicle.   An owner of a vehicle may also indirectly purchase a replacement Instrument Panel Cluster from Yazaki Defendants when repairing a damaged vehicle or where the Instrument Panel Cluster is defective.

**B.     The Structure and Characteristics of the Instrument Panel Clusters Market Render the Conspiracy More Plausible_____**

33.     The structure and other characteristics of the Instrument Panel Clusters market in the United States are conducive to a price-fixing agreement, and have made collusion particularly attractive in this market.  Specifically, the Instrument Panel Clusters market: (1) has high barriers to entry and (2) has inelasticity of demand.

### 1.    The Instrument Panel Clusters
   Market Has High Barriers to Entry

34.    A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supra-competitive pricing.  Where, however, there are significant barriers to entry, new entrants are less likely.  Thus, barriers to entry help to facilitate the formation and maintenance of a cartel.

35.    There are substantial barriers that preclude, reduce, or make more difficult entry into the Instrument Panel Clusters market.  A new entrant into the business would face costly and lengthy start-up costs, including multi-million dollar costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, skilled labor, and long-standing customer relationships.

36.    In addition, Yazaki owns several patents for the component parts that make up Instrument Fuel Panels.  These patents place a significant and costly burden on potential new entrants, who must avoid infringing on the patents when entering the market with a new product.

### 2.    There is Inelasticity of Demand for
   Instrument Panel Clusters

37.    "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other.  For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any.  In other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and so continue to purchase despite a price increase.

38.    For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices.  Otherwise, increased prices would result in declining sales, revenues and profits, as customers purchased substitute products or declined to

buy altogether.  Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

39.     Demand for Instrument Panel Clusters is highly inelastic.  Demand for Instrument Panel Clusters is inelastic because there are no close substitutes for these products.  In addition, customers must purchase Instrument Panel Clusters as an essential part of a vehicle, even if the prices are kept at a supra-competitive level.

**C.      Global Government Investigation Into Price-Fixing in the Automotive Parts Industry**

40.     A globally coordinated antitrust investigation is taking place in the United States, Europe, and Japan, aimed at suppliers of automotive parts, including Instrument Panel Clusters.

41.     The probe originated in Europe as the result of several European OEMs coming together to bring a complaint to the EC.  One carmaker is said to have failed to attract competitive bids for automotive wire harness systems, leading the company to join with other carmakers to take their complaint to the EC.

42.     On February 8, 2010, the EC executed surprise raids at the European offices of certain automotive parts makers as part of an investigation into anti-competitive conduct related to the manufacturing and sale of automotive parts.  The EC also carried out additional raids at the European offices of several suppliers of automotive parts on June 7, 2010.  Specifically, EC investigators raided the offices of Leoni AG, S-Y Systems Technologies Europe GmbH, and Yazaki.  "The Commission has reason to believe that the companies concerned may have violated European Union antitrust rules that prohibit cartels and restrictive business practices," an EC official said in a statement.

43.     In February 2010, Japan's Fair Trade Commission raided the Tokyo offices of Fujikura Ltd. ("Fujikura"), Sumitomo Electric Industries, Ltd. (Sumitomo"), and Yazaki as part

of an expansive investigation into collusion in the automotive parts industry dating back to at least 2003.

44.     The DOJ has stated that it is conducting an investigation of potential antitrust activity and coordinating its investigation with antitrust regulators in Europe. "The antitrust division is investigating the possibility of anticompetitive cartel conduct of automotive electronic component suppliers," Justice Department Spokeswoman Gina Talamona said.

45.     Indeed, on February 23, 2010, around the same time as the raids by the Japanese and European competition authorities, investigators from the FBI raided three Detroit-area Japanese auto parts makers as part of a federal antitrust investigation. The FBI executed warrants and searched the offices of these companies, including Yazaki's subsidiary in Canton Township, Michigan. Special Agent Sandra Berchtold said the affidavits supporting issuance of the warrants were sealed in federal court.

46.     To obtain search warrants, the United States was legally required to have probable cause, accepted by a magistrate, to believe that it would obtain evidence of an antitrust violation as a result of executing the search warrant – that is, the United States had to have evidence sufficient to warrant a person of reasonable caution to believe that raiding the offices of a seemingly lawful business would uncover evidence of antitrust violations and that claimed evidence must have been examined and accepted by a magistrate. That belief, which was recounted in sworn affidavits or testimony, must be grounded on reasonably trustworthy information.

**D.     Yazaki Guilty Plea Agreement**

47.     On January 30, 2012, the DOJ announced that Yazaki had agreed to pay a $470 million fine and plead guilty to a three count criminal information charging Yazaki with: (1) participating in a combination and conspiracy with its co-conspirators to suppress and eliminate

competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, automotive wire harnesses[1] and related products[2] sold to certain automobile manufacturers in the United States and elsewhere from at least as early as January 2000 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1; (2) participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of Instrument Panel Clusters sold to certain automobile manufacturers in the United States and elsewhere from at least as early as December 2002 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1; and (3) participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of fuel senders[3] sold to an automobile manufacturer in the United States and elsewhere from at least as early as March 2004 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1.

48.     According to the criminal information filed against Yazaki, Yazaki and its co-conspirators carried out the conspiracies by:

---

[1] The criminal information defines automotive wire harnesses to mean " automotive electrical distribution systems used to direct and control electronic components, wiring and circuit boards."

[2] The criminal information defines related products to mean "automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, electronic control units, fuse boxes, relay boxes, and junction blocks."

[3] The criminal information explains that "[f]uel senders reside in the fuel tank of an automobile and measure the amount of fuel in the tank."

(a)      participating in meetings, conversations, and communications in the United States and Japan to discuss the bids and price quotations to be submitted to certain automobile manufacturers in the United States and elsewhere;

(b)      agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to certain automobile manufacturers in the United States and elsewhere;

(c)      agreeing, during those meetings, conversations, and communications, to allocate the supply of Instrument Panel Clusters sold to certain automobile manufacturers in the United States and elsewhere on a model-by-model basis;

(d)      agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by certain automobile manufacturers in the United States and elsewhere;

(e)      submitting bids, price quotations, and price adjustments to certain automobile manufacturers in the United States and elsewhere in accordance with the agreements reached;

(f)      selling Instrument Panel Clusters to certain automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

(g)      accepting payment for Instrument Panel Clusters sold to certain automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

(h)      engaging in meetings, conversations, and communications in the United States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and

(i)     employing measures to keep their conduct secret, including but not limited to using code names and meeting at private residences or remote locations.

**E.     Additional Criminal Pleadings in the Automotive Parts Industry**

49.     In addition to Yazaki, a number of other companies and individuals have entered into plea agreements relating to their participation in conspiracies to fix prices and rig bids for automotive parts.

50.     Four executives from Yazaki (all Japanese nationals) – Tsuneaki Hanamura, Ryoji kuwai, Shigeru Ogawa, and Hisamitsu Takada –  have pleaded guilty to their participation in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of  automotive wire harnesses sold to certain automobile manufacturers in the United States and elsewhere in violation of the Sherman Act, 15 U.S.C. § 1.  These four executives of Yazaki will serve prison time ranging from 15 months to two years.  The two-year sentences would be the longest term of imprisonment imposed on a foreign national voluntarily submitting to U,S. jurisdiction for a Sherman Act antitrust violation.

51.     The plea agreements are an outgrowth of the DOJ's initial charges in its ongoing international cartel investigation of price-fixing and bid rigging in the automotive parts industry.

52.     The DOJ also announced that Denso Corporation ("Denso") has agreed to plead guilty and pay a total of $78 million in criminal fines and plead guilty to a two count criminal information charging Denso with:  (1) participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the automotive parts industry by agreeing

to rig bids for, and to fix, stabilize, and maintain the prices of electronic control units ("ECUs")[4] sold to an automobile manufacturer in the United States and elsewhere from at least as early as January 2000 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1; and (2) participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of heater control panels ("HCPs")[5] sold to an automobile manufacturer in the United States and elsewhere from at least as early as January 2000 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1.

53.     On September 29, 2011, the DOJ announced that Furukawa Electric Co., Ltd. ("Furukawa") had agreed to plead guilty and to pay a $200 million fine for its role in a criminal price-fixing and bid-rigging conspiracy involving the sale of automotive wire harness systems to automobile manufacturers.

54.     Three of Furukawa's executives also pleaded guilty to the same conspiracy.  The court sentenced two of the executives to 15 and 18 month prison sentences, to be served in the United States.  Sentencing of the third executive, who agreed to serve a year and a day in prison in the United States, is scheduled for February 28, 2012.

55.     "As a result of this international price-fixing and bid-rigging conspiracy, automobile manufacturers paid noncompetitive and higher prices for parts in cars sold to U.S. consumers," said Sharis A. Pozen, Acting Assistant Attorney General in charge of the Department of Justice's Antitrust Division.  "This cartel harmed an important industry in our

---

[4]  The criminal information defines an ECU as "an embedded system that controls one or more of the electronic systems or subsystems in a motor vehicle."

[5]  The criminal information states that "HCPs are located in the center console of an automobile and control the temperature of the interior environment of a vehicle."

nation's economy, and the Antitrust Division with the Federal Bureau of Investigation will continue to work together to ensure that these kinds of conspiracies are stopped."

56.     "When companies partner to control and price fix bids or contracts, it undermines the foundation of the United States' economic system," said FBI's Special Agent in Charge Andrew G. Arena.  "The FBI is committed to aggressively pursuing any company involved in antitrust crimes."

## CLASS ACTION ALLEGATIONS

57.     Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> All persons and entities that indirectly purchased, during the Class Period, Instrument Panel Clusters, for personal use and not for resale, including as a stand-alone replacement product or as a component of a new or leased motor vehicle from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator.

58.     Plaintiffs also bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the state antitrust, unfair competition, and consumer protection laws on behalf of the following class (the "Damages Class"):

> All persons and entities that indirectly purchased, during the Class Period, Instrument Panel Clusters, for personal use and not for resale, including as a stand-alone replacement product or as a component of a new or leased motor vehicle from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator.

59.     The Nationwide Class and the Damages Class are referred to herein as the "Classes."  Excluded from the Classes are the Yazaki Defendants, their parent companies,

subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Instrument Panel Clusters directly or for resale.

60. While Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe there are (at least) thousands of members in each Class.

61. Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of the Yazaki Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

(a)    Whether the Yazaki Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of Instrument Panel Clusters sold in the United States;

(b)    The identity of the participants of the alleged conspiracy;

(c)    The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)    Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

(e)    Whether the alleged conspiracy violated state antitrust and unfair competition law, as alleged in the Second Claim for Relief;

(f)    Whether the Yazaki Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Classes, thereby entitling Plaintiffs and the

members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Third Claim for Relief;

       (g)     Whether the conduct of the Yazaki Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes;

       (h)     The effect of the alleged conspiracy on the prices of Instrument Panel Clusters sold in the United States during the Class Period;

       (i)     Whether the Yazaki Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from the Plaintiffs and the members of the Classes;

       (j)     The appropriate injunctive and related equitable relief for the Nationwide Class; and

       (k)     The appropriate class-wide measure of damages for the Damages Class.

62.    Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs and all members of the Classes are similarly affected by Defendants' wrongful conduct in that they paid artificially inflated prices for Instrument Panel Clusters purchased indirectly from the Yazaki Defendants or their co-conspirators.

63.    Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.  Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes.  Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

64.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

65.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

66.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY

67.     The Yazaki Defendants' price-fixing conspiracy had the following effects, among others:

(a)     Price competition has been restrained or eliminated with respect to Instrument Panel Clusters;

(b)     The prices of Instrument Panel Clusters have been fixed, raised, maintained, or stabilized at artificially inflated levels; and

(c)     Indirect purchasers of Instrument Panel Clusters have been deprived of free and open competition.

68.     During the Class Period, Plaintiffs and the members of the Classes paid supra-competitive prices for Instrument Panel Clusters.

69.     By reason of the alleged violations of the antitrust laws, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for Instrument Panel Clusters than they would have paid in the absence of the Yazaki Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined.  This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## FRAUDULENT CONCEALMENT

70.     Plaintiffs and the members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until January 30, 2012, the date that the DOJ publicly announced Yazaki's guilty plea.

71.     Because the Yazaki Defendants' agreements, understandings and conspiracies were kept secret until January 30, 2012, Plaintiffs and members of the Classes before that time were unaware of the Yazaki Defendants' unlawful conduct, and they did not know before then that they were paying supra-competitive prices for Instrument Panel Clusters throughout the United States during the Class Period.

72.     The affirmative acts of the Yazaki Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

73.     By its very nature, the Yazaki Defendants' anti-competitive conspiracy was inherently self-concealing.  Instrument Panel Clusters are not exempt from antitrust regulation, and thus, before January 30, 2012, Plaintiffs reasonably considered it to be a competitive

industry.  Accordingly, a reasonable person under the circumstances would not have been alerted to investigate the legitimacy of the Yazaki Defendants' Instrument Panel Clusters prices before January 30, 2012.

74.     Plaintiffs and the members of the Classes could not have discovered the alleged contract, conspiracy or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Yazaki Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination or conspiracy.

75.     Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until January 30, 2012, when the DOJ issued a press release concerning Yazaki's anticompetitive conduct in the market for Instrument Panel Clusters.

76.     As a result of the Yazaki Defendants' fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled with respect to any claims that Plaintiffs and the members of the Classes have alleged in this Complaint.

## FIRST CLAIM FOR RELIEF
### Violation of Section 1 of the Sherman Act
### (on behalf of Plaintiffs and the Nationwide Class)

77.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

78.     The Yazaki Defendants and unnamed conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

79.     The acts done by each of the Yazaki Defendants as part of, and in furtherance of, their contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of the Yazaki Defendants' affairs.

80.     At least as early as December 2002, and continuing until at least February 2012, the exact dates being unknown to Plaintiffs, the Yazaki Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to fix, raise, maintain and/or stabilize prices, rig bids and allocate the market and customers in the United States for Instrument Panel Clusters, thereby creating anticompetitive effects.

81.     The anti-competitive acts were intentionally directed at the United States market for Instrument Panel Clusters and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for Instrument Panel Clusters throughout the United States.

82.     The conspiratorial acts and combinations have caused unreasonable restraints in the market for Instrument Panel Clusters.

83.     As a result of the Yazaki Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Class who purchased Instrument Panel Clusters have been harmed by being forced to pay inflated, supra-competitive prices for Instrument Panel Clusters.

84.     In formulating and carrying out the alleged agreement, understanding and conspiracy, the Yazaki Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

85.     The Yazaki Defendants' conspiracy had the following effects, among others:

(a)     Price competition in the market for Instrument Panel Clusters has been restrained, suppressed and/or eliminated in the United States;

(b)     Prices for Instrument Panel Clusters sold by the Yazaki Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

(c)     Plaintiffs and members of the Nationwide Class who purchased Instrument Panel Clusters indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

86.     Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for Instrument Panel Clusters purchased indirectly from the Yazaki Defendants and the co-conspirators than they would have paid and will pay in the absence of the conspiracy.

87.     The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

88.     Plaintiffs and members of the Nationwide Class are entitled to an injunction against the Yazaki Defendants, preventing and restraining the violations alleged herein.

**SECOND CLAIM FOR RELIEF**
**Violation of State Antitrust Statutes**
**(on behalf of Plaintiffs and the Damages Class)**

89.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

90.     From as early as December 2002 and continuing until at least February 2010, the Yazaki Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of  Instrument Panel Clusters in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

91.     The contract, combination, or conspiracy consisted of an agreement among the Yazaki Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive levels prices for Instrument Panel Clusters, rig bids and to allocate customers for Instrument Panel Clusters sold in the United States.

92.     In formulating and effectuating this conspiracy, the Yazaki Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

        (a)     participating in meetings and conversations among themselves during which they agreed to price Instrument Panel Clusters at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Instrument Panel Clusters sold in the United States;

        (b)     allocating customers and markets for Instrument Panel Clusters in the United States in furtherance of their agreements; and

        (c)     participating in meetings and conversations among themselves to implement, adhere to and police the unlawful agreements they reached.

93.     The Yazaki Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, raise, maintain and/or stabilize prices, rig bids and allocate the market and customers in the United States for Instrument Panel Clusters.

94.     The Yazaki Defendants' anticompetitive acts described above were knowing, willful and constitute violations or flagrant violations of the following state antitrust statutes.

95.     The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq.*

96.     The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq*.

97.     The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code Annotated §§ 28-4501, *et seq*.

98.     The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*.

99.     The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq*.

100.    The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act, 740 Illinois Compiled Statutes 10/1, *et seq*.

101.    The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq*.

102.    The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq*.

103.    The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, 10 M.R.S. §§ 1101, *et seq*.

104.    The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq*.

105.    The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq*.

106.    The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq*.

107.    The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code, §§ 30-14-103, *et seq.*

108.    The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

109.    The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

110.    The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

111.    The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq.*

112.    The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

113.    The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq.*

114.    The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq.*

115.    The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq.*

116.    The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Carolina's Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*

117.     The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1, *et seq.*

118.     The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq.*

119.     The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-911, *et seq.*

120.     The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq.*

121.     The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq.*

122.     The Yazaki Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et seq.*

123.     Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of the Yazaki Defendants' unlawful combination, contract, conspiracy and agreement.  Plaintiffs and members of the Damages Class have paid more for Instrument Panel Clusters than they otherwise would have paid in the absence of the Yazaki Defendants' unlawful conduct.  This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes the Yazaki Defendants' conduct unlawful.

124.     In addition, the Yazaki Defendants have profited significantly from the aforesaid conspiracy.  The Yazaki Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of members of the Plaintiffs and the members of the Damages Class.

125.    Accordingly, Plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys fees, to the extent permitted by the above state laws.

### THIRD CLAIM FOR RELIEF
**Unjust Enrichment**
**(on behalf of Plaintiffs and the Damages Class)**

126.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

127.    As a result of their unlawful conduct described above, the Yazaki Defendants have and will continue to be unjustly enriched.  The Yazaki Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of Instrument Panel Clusters.

128.    The Yazaki Defendants have benefited from their unlawful acts and it would be inequitable for the Yazaki Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs and the members of the Damages Class for Instrument Panel Clusters.

129.    Plaintiffs and the members of the Damages Class are entitled to the amount of the Yazaki Defendants' ill-gotten gains resulting from their unlawful, unjust and inequitable conduct.  Plaintiffs and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a pro rata basis.

### PRAYER FOR RELIEF

Accordingly, Plaintiffs respectfully request that:

A.     The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

B.     That the unlawful conduct, contract, conspiracy or combination alleged herein be adjudged and decreed:

(a)     An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)     A *per se* violation of Section 1 of the Sherman Act;

(c)     An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

(d)     Acts of unjust enrichment by Defendants as set forth herein.

C.     Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiffs and the members of the Damages Class be entered against the Yazaki Defendants in an amount to be trebled to the extent such laws permit;

D.     Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

E.     The Yazaki Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained

29

from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy or combination alleged herein, or from entering into any other contract, conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect;

   F. Plaintiffs and the members of the Damages Class be awarded restitution, including disgorgement of profits the Yazaki Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

   G. Plaintiffs and the members of the Classes be awarded pre and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

   H. Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

   I. Plaintiffs and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

DATED:  January 31, 2012     THE MILLER LAW FIRM

         By /s/ E. Powell Miller
          E. Powell Miller
          950 West University Drive
          Rochester, Michigan  48307
          Tel: (248) 841-2200
          Fax: (248) 652-2852
          epm@millerlawpc.com

          Hollis Salzman
          Bernard Persky
          Kellie Lerner
          Seth Gassman
          LABATON SUCHAROW LLP
          140 Broadway
          New York, NY 10005

(212) 907-0700
hsalzman@labaton.com
bpersky@labaton.com
klerner@labaton.com
sgassman@labaton.com

M. Stephen Dampier
Law Offices of M. Stephen Dampier,
P.C.
55 N. Section Street
Fairhope, AL  36532
Tel: (251) 929.0900
Fax: (251) 929.0800
stevedampier@dampierlaw.com

*Attorneys for Plaintiffs and the Proposed*
*Classes*

## JURY DEMAND

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil

Procedure, of all issues so triable.

DATED:  January 31, 2012

THE MILLER LAW FIRM

By */s/ E. Powell Miller*
   E. Powell Miller
   950 West University Drive
   Rochester, Michigan  48307
   Tel: (248) 841-2200
   Fax: (248) 652-2852
   epm@millerlawpc.com

*Attorneys for Plaintiffs and the Proposed Classes*